CASE NO. 25-5014

---

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

---

**JACOB GLENN BLANKENSHIP, AS AN INDIVIDUAL,**

**Plaintiff - Appellant,**

**v.**

**LOUISVILLE-JEFFERSON COUNTY, KY METRO GOVERNMENT;
ELLIOTT YOUNG, IN HIS INDIVIDUAL CAPACITY AND ACTING AS A
TROOPER/OFFICER FOR KENTUCKY STATE POLICE,**

**Defendants - Appellees.**

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY AT LOUISVILLE,
CIVIL ACTION NO. 3:23-cv-00235**

**BRIEF OF APPELLEE,
TROOPER ELLIOTT YOUNG**

**Brenn O. Combs
Legal Counsel
KENTUCKY STATE POLICE
Legal Office
919 Versailles Road
Frankfort, KY  40601
(502) 782-1800
(502) 573-1636 facsimile
brenn.combs@ky.gov
Counsel for Appellee Young**

# Disclosure of Corporate Affiliations
# and Financial Interest

Sixth Circuit
Case Number: 25-5014        Case Name: Jacob Blankenship v. Louisville-Jefferso

Name of counsel:  Brenn O. Combs

Pursuant to 6th Cir. R. 26.1, Elliott Young

Name of Party

makes the following disclosure:

1.     Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No

2.     Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

No

---

CERTIFICATE OF SERVICE

I certify that on         May 21, 2025         the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

        s/ Brenn O. Combs
        919 Versaille Rd.
        Frankfort, KY 40601

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

i

# TABLE OF CONTENTS

**DISCLOSURE OF CORPORATE AFFILIATIONS AND FINANCIAL INTEREST** ............................................................... **i**

**TABLE OF CONTENTS** ........................................................................ **ii**

**TABLE OF AUTHORITIES** ................................................................ **iii**

**STATEMENT CONCERNING ORAL ARGUMENT** .................................. **vi**

**STATEMENT OF JURISDICTION** ...................................................... **1**

**STATEMENT OF ISSUES** .................................................................. **1**

**STATEMENT OF THE CASE** .............................................................. **2**

**SUMMARY OF ARGUMENT** ............................................................. **7**

**ARGUMENTS** .................................................................................. **9**

  I.     STANDARD OF REVIEW ........................................................ 9

  II.    THE BASIS FOR BLANKENSHIP'S ARREST WAS THE CONTENT-NEUTRAL APPLICATION OF KENTUCKY'S CRIMINAL TRESPASS LAW, WHICH RECEIVES INTERMEDIATE SCRUTINY ................................................... 10

  III.   THE DISTRICT COURT CORRECTLY FOUND THAT IT MADE NO DIFFERENCE WHETHER BLANKENSHIP WAS ARRESTED IN A TRADITIONAL OR LIMITED PUBLIC FORUM, BECAUSE THE BASIS FOR HIS ARREST WAS CONTENT-NEUTRAL ................................... 12

  IV.   TROOPER YOUNG DID NOT VIOLATE BLANKENSHIP'S FIRST AMENDMENT RIGHTS AND THE FACTS OF THIS ACTION DO NOT SUPPORT HIS ARGUMENT TO THE CONTRARY ....................................... 17

V.    METRO'S ADMINISTRATIVE POLICIES ARE
UNRELATED TO TROOPER'S YOUNG'S DECISION TO
ARREST BLANKENSHIP AND THE COURT'S DECISION
ABOUT THOSE POLICIES WOULD NOT DEFEAT
TROOPER YOUNG'S QUALIFIED IMMUNITY .................................. 24

VI.    THE DISTRICT COURT CORRECTLY FOUND THAT
TROOPER YOUNG WAS ENTITLED TO QUALIFIED
IMMUNITY ........................................................................... 25

**CONCLUSION** ................................................................................. **27**

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT** ........ **30**

**CERTIFICATE OF SERVICE** ......................................................... **30**

**DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS** ....... **31**

# TABLE OF AUTHORITIES

## CONSTITUTION

U.S. Const. amend. I ..........................................................................10, 23

## STATUTES

28 U.S.C. §1291 ...................................................................................1

28 U.S.C. §1331 ...................................................................................1

28 U.S.C. §1343 ...................................................................................1

42 U.S.C. §1983 ...................................................................................1

Ky. Rev. Stat. § 16.010-.176...................................................................27

Ky. Rev. Stat. § 511.080 .............................................. 5, 11-14, 21, 23, 25

Ky. Rev. Stat. § 511.090 ................................................................5, 14, 21

## RULES

Fed. R. Civ. P. 56 ............................................................................ 9-10

## CASES

*Ashcroft v. al–Kidd,* 563 U.S. 731, 741 (2011). .....................................19

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993) ........23

*Cox v. Kentucky Dept. of Transp*., 53 F.3d 146 (6th Cir. 1995)..............................10

*Emp. Div., Dep't of Hum. Res. of Oregon v. Smith*, 494 U.S. 872 (1990)......... 23-24

*Gonzalez v. Trevino*, 602 U.S. 653 (2024).................................................22

*Grendell v. Ohio Supreme Court*, 252 F.3d 828 (6th Cir. 2001)............................27

*Hansard v. Barrett*, 980 F.2d 1059 (6th Cir. 1992)................................................10

iv

*Hartman v. Moore*, 547 U.S. 250 (2006)...............................................................22

*McCullen v. Coakley*, 573 U.S. 464 (2014) ..........................................................11

*National Rifle Ass'n of America v. Magaw*, 132 F.3d 272 (6th Cir. 1997).............27

*Nieves v. Bartlett*, 587 U.S. 391 (2019) ...............................................................22

*R.A.V. v. St. Paul*, 505 U.S. 377 (1992)................................................................10

*Reform Am. v. City of Detroit, Michigan*, 37 F.4th 1138 (6th Cir. 2022) ..............11

*Skovgard v. Pedro*, 448 F. App'x 538 (6th Cir. 2011) ..........................................14

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989)..............................................11

## STATEMENT CONCERNING ORAL ARGUMENT

The Appellee, Trooper Elliott Young, does not request oral argument of this matter. Oral argument would not assist the Court in deciding this appeal, because the facts of the case are adequately set out in the briefs and the video of Mr. Blankenship's arrest and the law applicable to the facts in the record is not complex or novel.

## STATEMENT OF JURISDICTION

The district court had jurisdiction of the claims brought by Plaintiff-Appellant Jacob Blankenship, pursuant to 28 U.S.C. §§ 1331, 1343, by virtue of 42 U.S.C. § 1983.

This Court has jurisdiction to entertain this appeal pursuant to 28 U.S.C. §1291, based on the timely Notice of Appeal filed by Blankenship. [Notice of Appeal, R. 103, PageID # 1341-1343].

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

The Appellee, Trooper Elliott Young, accepts the Appellant's statement as to the issues he raises on appeal.

# STATEMENT OF THE CASE

The Appellee, Trooper Elliott Young, is a Kentucky State Trooper assigned to Kentucky State Police Post #4, in Elizabethtown, Hardin County, Kentucky. [Deposition of Trooper Elliott Young, R. 55-2, PageID # 366].

In May of 2022, Churchill Downs hosted the 148th Running of the Kentucky Derby ("the Derby"), a ticketed event, in Louisville, Kentucky. [*See, e.g.*, Complaint, R. 1, PageID # 7]. As they do each year, consistent with Louisville Metro's policies, Churchill Downs applied for and was granted a special event permit for the event. [*Id.*, Permit Application, R. 55-3, PageID ## 472-501; Permit, R. 55-4, PageID ## 502-503]. This permit provided for Churchill Downs' authority to close and otherwise restrict access to several streets and parking areas within a specified perimeter, from April 28, 2022, to May 9, 2022. [R. 55-4, PageID ## 502-503]. In effect, the Permit designated the permitted areas as an extension of Churchill Downs' property for the duration of the event. [*See, e.g., * Sweeney Dep., R. 52-2, PageID # 262; Sweeney Dep., R. 71-2, PageID # 1101-1102]. One such area within the permitted space was along Central Avenue in Louisville, KY. [R. 55-4, PageID ## 502-503]. The permitted area on Central Avenue stretched from Taylor Boulevard to Floyd Street, and encompassed both areas that Churchill Downs could keep open to public access and areas to which it could limit access. [*Id.*] The latter areas were fenced in and posted with signage that warned of trespassing. [*See, e.g.*,

Photograph, R. 55-5, PageID # 504; Blankenship's video, "Full Preach May 7 Kentucky SD 480p," R. 62/55-6/R. 65[1], at 12:51:09 PM (video file time 1:21:581); Johnson Deposition, R. 55-7, PageID ## 533-535]. The area at issue in this case was on Central Avenue between South 3rd Street and South 4th Street. [*See, e.g.*, Johnson Deposition, R. 55-7, PageID # 534]. "KSP leadership understood that, under the event permit, Churchill Downs had authority over the permitted area; could limit access to the permitted area; and could trespass individuals within the permitted area." [Memorandum Opinion and Order, R. 101, PageID # 1318 (citing R. 55-7 at 534-36; R. 71-1 at 1013, 1016)]. The area was fenced-in with an opening on the sidewalk for entry. [*Id.*]. Large green and white signs were posted on both sides of the opening, that read:

NO TRESPASSING

VALID CREDENTIALS ONLY
BEYOND THIS POINT

CONSENT TO SEARCH OF
PROPERTY OR PERSON
BEFORE ENTERING

[R. 101, PageID # 1318; Photograph, R. 55-5, PageID # 504; Blankenship's video, R. 62/55-6/R. 65, Johnson Deposition, R. 55-7, PageID ## 533-535].

---

[1] The district court primarily referred to Blankenship's video, "Full Preach May 7 Kentucky SD 480p," as docket entry 62, although copies were filed in the record by each party. This Appellee will use R. 62 to conform to the usage in the opinion that is the subject of the appeal.

On May 7, 2022, Blankenship, accompanied by a group of other demonstrators, went to part of the area permitted and fenced by Churchill Downs. [Blankenship's video, R. 62, at 12:51:09 PM; Complaint, R. 1, PageID ## 4-5]. Prior to proceeding into the area, Blankenship instructed the group that if any individuals approached the group to interact with them, one or more members of the group were to intercept them and prevent the individual from interrupting the members of the group "preaching," on the megaphone, in order to "keep that word going." [R. 62, at 12:16:30]. Blankenship and other demonstrators entered and walked through the area of Churchill Downs within the permitted space that did not have any signage indicating limited access, then entered the fenced-in area on Central Avenue between South 3rd and 4th Streets marked with the above-described "NO TRESPASSING" signs. [*Id*. at 12:34:00 – 12:51:28]. Once they entered the credentials-only area, Blankenship's group remained therein and demonstrated with signs, distributed literature, and took turns using a megaphone and speaker to "preach" at other individuals within the area. [*Id*. at 12:51:30, *et seq*.]. There is no dispute that Blankenship and his group did not have Churchill Downs-issued credentials, were not event ticketholders, and did not otherwise have permission from either Churchill Downs or the city to enter or remain in the fenced area.

On Blankenship's video, at 13:08, a uniformed security guard approached Blankenship's group and told members of the group, "y'all gotta go ... you're

trespassing," while pointing away from Churchill Downs. [R. 62, 13:08:35]. Blankenship's group was told that they could go to the other side of the street and preach "all you want." [*Id*. at 13:10:36]. Instead, Blankenship directed a member of his group, Joseph Estephane, to ignore the security guards and indicated that "we don't have to listen to them. Don't even entertain them. They're not cops." [*Id*. at 13:11:26; R. 101 at PageID # 1320].

Under Kentucky law, "[a] person is guilty of criminal trespass in the third degree when he knowingly enters or remains unlawfully in or upon premises." Ky. Rev. Stat. § 511.080(1). "A person "enters or remains unlawfully" in or upon premises when he is not privileged or licensed to do so." Ky. Rev. Stat. § 511.090(1). A person's unauthorized presence on land becomes unlawful when the land is "fenced []or otherwise enclosed," or when a "notice against trespass [is] personally communicated to him by the owner of the land or some other authorized person," or where "notice is given by posting in a conspicuous manner." Ky. Rev. Stat. § 511.090(4).

After Blankenship and his group ignored the request from Churchill Downs staff to leave the property, representatives contacted the Kentucky State Police security detail that was present for the race. "What was relayed to us was that there were protestors or people who were <u>not ticket-holders</u> within the confines of the permitted area. And the State Police, we were asked to go down there to address the

situation." [Johnson Dep., R. 55-7, PageID # 543 (emphasis added)].

The district court found that Trooper Young had probable cause to arrest Blankenship for Criminal Trespass in the Third Degree, for being in the fenced area and refusing to leave after multiple warnings. [Memorandum Opinion and Order, R. 30, PageID ## 165-173].

The citation Blankenship received at the time of his arrest stated that:

> On 5-7-2022, the above was remaining unlawfully upon premises of Churchill Downs. The above was instructed to leave by security as well as Churchill Downs staff. The above was given an opportunity to leave, but refused to do so.

[Blankenship Dep., R. 55-8, PageID ## 665-666; Kentucky Uniform Citation (redacted), R. 55-9, PageID # 711]. There was no indication that Blankenship's arrest was based on the content of his speech or that he was arrested for any reason other than his act of criminal trespass and Blankenship produced no evidence indicating the arrest was motivated by his First Amendment protected activities. [*See*, Young Dep., R. 55-2, PageID ## 438-440; Blankenship Dep., R. 55-8, PageID ## 665-666]. Trooper Young's undisputed testimony was that Blankenship and his party would have had to leave the premises, regardless of whether anyone at Churchill Downs complained about their preaching, because "[t]hey were remaining unlawfully without credentials. They were the only ones I observed in that area doing so. I don't believe they could have stayed there." [Young Dep., R. 55-2, PageID #

393]. No witness in this action disputed Trooper Young's statement that if Blankenship had a ticket for the Kentucky Derby, he would merely have "asked him to continue preaching if he felt the need to do so, to refrain from some of the inciteful language he was using, but to remain -- that he -- he could stay there as long as he had plans on entering the premises at some point within a reasonable time." [*Id*. at PageID # 425].

When Blankenship was arrested, other members of his group, who were in the same place, participating in the same activity, but who left when the Troopers told them to leave the fenced area, were not arrested. [*See*, Blankenship Dep., R. 55-8, PageID ## 658-659]. Likewise, other groups conducting activities within the permitted areas without proper credentials, were told to leave and did so without arrest or incident. [*See, e.g*., Johnson Dep., R. 55-7, PageID ## 545-547]. Only those who defied an order to leave the fenced area were arrested, regardless of the content of their speech or activities. [*Id*.; Young Dep., R. 55-2, PageID ## 438-440; Blankenship Dep., R. 55-8, PageID ## 658-659].

In Jefferson Circuit Court, Blankenship's criminal trespassing charge was dismissed without prejudice, with the condition that he have no unlawful contact with Churchill Downs. [*See, e.g.,* Criminal Pink Slip, R. 55-10, PageID # 712].

## SUMMARY OF THE ARGUMENT

The district court correctly determined that the undisputed facts in the record

showed that that the law and circumstances under which Blankenship was arrested were content-neutral. The applicable standard of review was intermediate scrutiny. Factually, the permitted area around Churchill Downs was narrowly tailored to serve Metro's significant interests in traffic control and public safety. Blankenship had alternative avenues to share his message, including simply moving a few feet away, outside the fenced and restricted area, with essentially the same audience. Therefore, Metro and Young were entitled to judgment as matter of law.

Blankenship argues that the orders for his group to leave the fenced area and his subsequent arrest were not content neutral. However, Blankenship seriously misstates the facts in the record, or relies on conclusions not supported by the record, to make that argument. Blankenship was arrested under a content-neutral criminal trespass statute and he was treated exactly like every other unticketed person discovered within the fenced area, regardless of the nature of their messages or conduct.

Trooper Young's decision to arrest Blankenship for criminal trespass, when he refused to move outside the fenced, signed, permitted area, after being told to do so by both Churchill Downs staff and state police, is unrelated to Blankenship's speech or religious exercise and did not violate his rights under the First Amendment.

Blankenship's arguments about the validity of Metro's internal administrative

permit policies or procedures are unrelated to any possible claim against Trooper Young, who is a state law enforcement officer from outside Jefferson County. Blankenship's argument merely serves to illustrate that his claims are unsupported by existing legal precedent. Any action by Young did not violate clearly established law, entitling him to summary judgment on the basis of qualified immunity.

Young was entitled to qualified immunity. Appellant's statement that "the District Court's finding of qualified immunity only applied to the false arrest claim[,]" is clearly incorrect as the district court pointed out in the Memorandum Opinion and Order saying that Young was entitled to qualified immunity on all of Blankenship's claims. [R. 101, PageID # 1337]. Even if qualified immunity only applies to claims for damages, and not for claims for declaratory or injunctive relief, Blankenship made no claim for any particular declaratory or injunctive relief that was in any way applicable to Young. Moreover, Blankenship has made no claim of present or likely future harm and his claims for past injuries do not support a request for declaratory and injunctive relief.

## ARGUMENTS

### I.     STANDARD OF REVIEW

The United States District Court for the Western District of Kentucky was required to answer the question posed by Fed.R.Civ.P. 56: whether "the evidence is insufficient to reasonably support a jury verdict in favor of the nonmoving party."

*Cox v. Kentucky Dept. of Transp.,* 53 F.3d 146, 150 (6th Cir. 1995). Resolving

doubts in favor of Blankenship, the court found that the evidence that his rights were

violated was insufficient to support a jury verdict in his favor. [Memorandum

Opinion and Order, R. 101, PageID ## 1316-1339].

On appeal, this Court "reviews a grant of summary judgment *de novo*, using

the same Rule 56(c) standard as the district court." *Cox v. Kentucky Dept. of Transp.*,

53 F.3d 146, 149 (6th Cir. 1995)(citing *Hansard v. Barrett*, 980 F.2d 1059 (6th Cir.

1992)).

## II. THE BASIS FOR BLANKENSHIP'S ARREST WAS THE CONTENT-NEUTRAL APPLICATION OF KENTUCKY'S CRIMINAL TRESPASS LAW, WHICH RECEIVES INTERMEDIATE SCRUTINY

Blankenship argues from the assumption that he was subjected to arrest in a

public forum, based on the content of his speech. [Appellant's Br. at 19-20]. In such

a case, strict scrutiny would apply to the First Amendment claim. *R.A.V. v. St. Paul*,

505 U.S. 377, 395 (1992); U.S. Const. amend. I.

However, it is common sense that the police are not required to satisfy the

strict scrutiny standard in stopping every offender from violating generally

applicable criminal laws, unrelated to their speech or religious exercise, just because

the offender expresses a religious message while doing so. In this case, Trooper

Young was not required to prove a compelling governmental interest in restricting

the content of Blankenship's speech, where he was arrested for criminal trespass

10

under a state statute that applied equally regardless of the content of his speech or even if he was not speaking. *See,* Ky. Rev. Stat. § KRS 511.080; [Memorandum Opinion and Order, R. 101, PageID ## 1316-1339]. As the district court quoted:

> [A] facially neutral law does not become content based simply because it may disproportionately affect speech on certain topics. On the contrary, "[a] regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others."

[R. 101, PageID # 1327 (quoting *McCullen v. Coakley*, 573 U.S. 464, 480 (2014)(quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989))].

It was undisputed in the record that "Blankenship's offense was lingering in the ticketed area after being told to leave." [R. 101 at PageID # 1329 (citing Young Dep., R. 55-2, Page ID # 391)]. Because the "sole criterion for admission to or exclusion from the [ticketed] area - whether an individual had a ticket - was content neutral, defendants' incidental burden on plaintiffs' speech merits only intermediate scrutiny." *Reform Am. v. City of Detroit, Michigan,* 37 F.4th 1138, 1149 (6th Cir. 2022); *see* Ky. Rev. Stat. § KRS 511.080. As the district court said:

> "[A] content-neutral time, place, or manner restriction can survive intermediate scrutiny if defendants make three showings." *Reform Am.,* 37 F.4th at 1149. (1) "[T]he restricted area must have served a 'significant governmental interest'"; (2) "it must have been 'narrowly tailored' to that purpose, meaning that the restriction survives so long as the governmental interest 'would [have been] achieved less effectively' in its absence"; and (3) "it must have left open 'ample alternative channels for

communication."' *Id*. (quoting *Ward*, 491 *U.S.* at 791, 799).

[R. 101, PageID # 1330].

The district court correctly found that:

> because the restrictions of access to the permitted and ticketed areas served purposes unrelated to the content of speech, those restrictions were content-neutral. The purpose of establishing the permitted area-facilitating ingress and egress for Churchill Downs-can be justified without reference to the content of any speech. *See McCullen*, 573 U.S. at 480; Ward, 491 U.S. at 791. Accordingly, Blankenship's free speech claim calls for intermediate scrutiny. *Reform Am.*, 37 F.4th at 1149; *Saieg*, 641 F.3d at 735.

[*Id.* at PageID # 1329-1330]. Blankenship's arguments that his arrest, or Kentucky's criminal trespass law, were somehow directed at the content of his speech, so as to subject this claim to strict scrutiny, are not supported by the facts in the district court record.

## III. THE DISTRICT COURT CORRECTLY FOUND THAT IT MADE NO DIFFERENCE WHETHER BLANKENSHIP WAS ARRESTED IN A TRADITIONAL OR LIMITED PUBLIC FORUM, BECAUSE THE BASIS FOR HIS ARREST WAS CONTENT-NEUTRAL

In his third argument, Blankenship claims that the district court erred in failing to make a conclusion about "'whether Blankenship was arrested in a traditional public forum or limited public forum,'" because the court was somehow incorrect in determining that Kentucky's "criminal trespass" statute, Ky. Rev. Stat. § 511.080,

was "content neutral." [Appellant's Br. at 21(quoting Memorandum Opinion and Order, R. 101, PageID # 1327, 1329)].

To support his claim that "the District Court erred in finding that the restriction on Blankenship's speech was content neutral," Blankenship does not mention the law under which Trooper Young arrested him. Without mentioning Ky. Rev. Stat. § 511.080, Blankenship simply discusses the validity of the permit issued to Churchill Downs by Young's co-appellee, the Louisville-Jefferson County, Ky Metro Government ("Metro"). [Appellant's Br. at 21-30].

Metro is best suited to respond to arguments about the permit that is issued to Churchill Downs for the Kentucky Derby each year. Appellant Young will respond only briefly to this argument, because Trooper Young had never seen the permit and had no knowledge of the permitting process. [*See, e.g.,* Young Dep., R. 55-2, PageID ## 376-382]. Trooper Young's instruction, as part of the temporary security detail for the Kentucky Derby, was only that, "the area covered by the permit was actually their premises or meaning private property[.]" [*Id*. at PageID ## 380-381].

Blankenship argues that Churchill Downs' permit was non-exclusive and that the non-exclusive status supports his conclusion that the fenced area surrounded by "no trespassing" signs was a traditional public forum. Trooper Young acted under the belief, based on his knowledge of the event, that the area was functionally private property controlled by Churchill Downs. [*Id*.].

13

Blankenship was arrested under KRS 511.080, which states: "A person is guilty of criminal trespass in the third degree when he knowingly enters or remains unlawfully in or upon premises." Therefore, Young had probable cause if "on the basis of the facts known to [him], [he] could have reasonably concluded that [Blankenship] knowingly entered or remained" unlawfully in the area he was arrested.

[Memorandum Opinion and Order, R. 30, PageID # 167 (citing *Skovgard v. Pedro*, 448 F. App'x 538, 544 (6th Cir. 2011)]. It is the law in Kentucky that a person commits criminal trespass when he enters onto land that is "fenced []or otherwise enclosed" or where "notice is given by posting in a conspicuous manner." Ky. Rev. Stat. § 511.090(4). The area where Blankenship was arrested was both fenced and conspicuously posted with signs. [Memorandum Opinion and Order, R. 101, PageID ## 1318-1319; Young Dep., R. 55-2, PageID ## 385-389]. That is as much as Trooper Young knew of the permitting procedures or ordinances when he arrested Blankenship. [*Id*.]. There has never been a legal decision of which the Appellee is aware, saying that a police officer must enquire into the legal property rights of the party fencing land and posting signs, before enforcing Kentucky's trespass statutes. [R. 101, PageID ## 1318-1319]. As the district court correctly concluded, Blankenship's argument about exclusivity and the "public forum" were essentially immaterial to the decision that Trooper Young was entitled to qualified immunity. [*Id*. at PageID ## 1324-1327].

As to Blankenship's equally immaterial argument that "[e]ven if Churchill Downs had an exclusive permit, it did not require tickets to enter the arrest area[,]" that is simply incorrect under the facts in the record. Louisville Metro's special events manager, who issues the event permits for the city, said as follows:

> [Mr. Markese].Well, what authority specifically does the permit give to Churchill Downs to exclude people from their permitted area?
> [Mr. Sweeney] The permit gives them the right to conduct their operations within the area they control.· They if they decide they want to set up a point that says right here you have to -- have to have a ticket to get by, or we have the right to review your ticket, either every person or randomly, they do have that – within that -- that location on that area, even though it's a public property, they control it and they can decide at which point they want to review tickets or sell tickets or allow people to walk through.

[Sweeney Dep. R.  71-2, PageID #  1101]. Mr. Sweeney went on to say, "[t]hey clearly put up a notice that you have to have valid credentials. That -- generally that means tickets and or other authority." [*Id*. at 1102]. That is, likewise, how Trooper Young understood the "credentials" requirement of the signs. [*See, e.g.,* Young Dep., R. 55-2, PageID ## 423-425]. Trooper Young did not ask Blankenship for a ticket when he approached, because the Troopers had already been informed by Churchill Downs staff that these were trespassers without tickets. [Johnson Dep., R. 55-7, PageID # 543 ("What was relayed to us was that there were protestors or people who were not ticket-holders within the confines of the permitted area.")].

Young, acting under color of law, enforced a request from Churchill Downs to move Blankenship from within the fenced, signed, permitted area. [*See, e.g.*, Johnson Dep., R. 55-7, PageID ## 522, 553-557; Video R. 62 at 14:18:12 – 14:18:48]. Trooper Young only arrested Blankenship when he failed to heed the order to leave the area, unlike his fellow protestors who walked away and were not arrested. [*Id.*]. The arrest had nothing at all to do with Blankenship's speech and no witness disputed Trooper Young's statement that if Blankenship had a ticket for the Kentucky Derby, he would merely have "asked him to continue preaching if he felt the need to do so, to refrain from some of the inciteful language he was using, but to remain -- that he -- he could stay there as long as he had plans on entering the premises at some point within a reasonable time." [Young Dep., R. 55-2, at PageID # 425].

The district court correctly determined that, because "the restriction of Blankenship's speech was content-neutral, it makes no difference whether Blankenship was arrested in a traditional or limited public forum." [Memorandum Opinion and Order, R. 101, PageID # 1327]. Blankenship makes no argument that reasonably disputes the district court's determination. It certainly makes no difference to the question of whether Trooper Young is entitled to qualified immunity for enforcing Kentucky law, according to the letter of the law, based on the best information available to any of the parties at the time of the arrest.

16

## IV. TROOPER YOUNG DID NOT VIOLATE BLANKENSHIP'S FIRST AMENDMENT RIGHTS AND THE FACTS OF THIS ACTION DO NOT SUPPORT HIS ARGUMENT TO THE CONTRARY

Blankenship's fourth argument broadly encompasses the ultimate claim raised by his Complaint, that Trooper Young and Metro violated his First Amendment rights when he was arrested for criminal trespass. [Complaint, R. 1, PageID # 1-27]. As he does throughout his brief, Blankenship approaches the issue without acknowledging any of the flaws in the foundation of his claims, which led the district court to grant summary judgment to the Defendants/Appellees. Blankenship argues as if the record had not made it unavoidably clear that he was arrested solely for trespassing and refusing to leave when asked. Blankenship spends many pages detailing the law that *would* apply, if the undisputed facts were as he wishes them to be, and the government had set out to silence him. [Appellant's Br. at 30-52]. However, Blankenship was arrested for the location of his feet, not the content of his speech.

Because Blankenship's legal arguments are addressed to facts that are unsupported by the record, they are generally irrelevant to the court's consideration of the district court's opinion. Trooper Young's argument will, for the most part, address Blankenship's erroneous conclusions about the facts and ignore legal arguments that do not apply to the facts that are actually in the record of this case.

Blankenship argues that his exclusion from the permitted area at Churchill

Downs was not content neutral, but then fails to support that position by reference to facts in the record. This portion of Blankenship's argument, at pages 30-36, does not contain a single citation to the record. Instead, Blankenship states conclusions unsupported by the record, then sets out the law that would apply if the facts had been as he concludes. They were not.

Blankenship first cites to the record at page 37 of his brief, for the conclusion that every single witness in this matter "agree[d] that, when Churchill Downs has a permit, the permitted area becomes 'private property.'" [Appellant's Br. at 37 (citing Blankenship Dec., R. 59-1, PageID #" 857; Johnson Depo., R. 59-7, PageID # 893-94, 896; Young Depo., R. 55-2, PageID # 379, 380-81, 387-88, 407, 430; Metro Depo., R. 59-3, PageID # 867, 875, 877; Churchill Downs Depo., R. 58-2, PageID # 788)]. Obviously, it was reasonable for Young to share the belief of every other witness, including Churchill Downs' representative and the city official who issued the permit, as to the nature and effect of the permit.

What matters to Trooper Young, in this portion of the argument, is that Blankenship does not cite any law saying that a city may not temporarily lease or permit a private entity to use land that is normally public, and continue to act as a private business entity on that land while doing so. [Appellant's Br. at 36-39]. To the extent Blankenship asks this Court to recognize such a rule for the first time in this appeal, it only shows that such law was not "clearly established" when Trooper

Young arrested Blankenship and the district court correctly found that Trooper Young was entitled to qualified immunity. [Memorandum Opinion and Order, R. 101, PageID # 1337]; *See, e.g., Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011).

Blankenship argues that "no restricted area was created" by Churchill Downs, where Blankenship was arrested. To the contrary, it is undisputed in the record that the <u>fenced</u> area where he was arrested had "green signs … on either side of the southern Central Avenue sidewalk." [Memorandum Opinion and Order, R. 101, PageID # 1318]. These signs said:

NO TRESPASSING
VALID CREDENTIALS ONLY BEYOND THIS
POINT
CONSENT TO SEARCH OF PROPERTY OR PERSON
BEFORE ENTERING

[*Id*. (citing R. 55-5; R. 59-5; Blankenship's video, "Full Preach May 7 Kentucky SD 480p," R. 62 at 12:51:20)]. Blankenship's own video shows that he entered through an opening in a fence that the sidewalk passed through, walking directly between those signs. [R. 62, at 12:51:09 – 12:51:26 PM].

Blankenship claims that he was never asked if he had a ticket before being arrested. [Appellant's Br. at 34-35]. However, it is undisputed in the record that the Troopers who approached Blankenship's group and ultimately arrested him had already been informed by Churchills Downs' representatives that the group did not have tickets. "What was relayed to us was that there were protestors or people who

19

were not ticket-holders within the confines of the permitted area. And the State Police, we were asked to go down there to address the situation." [Johnson Dep., R. 55-7, PageID # 543]. That was apparently known because of the previous contacts with both Churchill Downs' staff and Major Johnson, of the State Police. [R. 55-2, PageID # 418-19; Video, R. 62, at 13:08:35 - 13:10:40].

Blankenship claims that:

> Metro facilitates banishments from permitted property based on reaction of listeners – the organizer and whoever complains to it – and with the expulsion of Blankenship this dubious prospect became a reality. Metro enforced Churchill Downs's wishes to exclude Blankenship, arresting him for trespass, simply because Churchill Downs did not want him there.

[Appellant's Br. at 33]. For this conclusion he cites Trooper Young's deposition. [*Id.* (citing R. 55-2, PageID # 393; 418-19)]. However, referring to Trooper Young's deposition in the record, we see that when he was asked if Blankenship's party could have stayed where they were "if Churchill Downs didn't have a problem with them being there," he said, "[t]hey were remaining unlawfully without credentials. They were the only ones I observed in that area doing so. I don't believe they could have stayed there." [R. 55-2, PageID # 393]. No witness in this action disputed Trooper Young's statement that if Blankenship <u>had</u> a ticket for the Kentucky Derby, he would merely have "asked him to continue preaching if he felt the need to do so, to refrain from some of the inciteful language he was using, but to remain -- that he -- he could

stay there as long as he had plans on entering the premises at some point within a reasonable time." [*Id*. at PageID # 425]. Referring to the other section of the deposition cited by Blankenship, we see only a discussion of the number of people, other state police and Churchill Downs' staff, who had asked Blankenship to leave, prior to his arrest. [R. 55-2, PageID # 418-19]. There is no indication that any of those people acted on the basis of Blankenship's religious message.

Under Kentucky law, "[a] person is guilty of criminal trespass in the third degree when he knowingly enters or remains unlawfully in or upon premises." Ky. Rev. Stat. § 511.080(1). "A person "enters or remains unlawfully" in or upon premises when he is not privileged or licensed to do so." Ky. Rev. Stat. § 511.090(1). The citation Blankenship received at the time of his arrest stated that:

> On 5-7-2022, the above was ·remaining unlawfully upon premises of Churchill Downs. The above was instructed to leave by security as well as Churchill Downs staff. The above was given an opportunity to leave, but refused to do so.

[Blankenship Dep., R. 55-8, PageID ## 665-666; Kentucky Uniform Citation, R. 55-9, PageID # 711]. There was no indication that Blankenship's arrest was based on the content of his speech or that he was arrested for any reason other than his act of criminal trespass and Blankenship has produced no evidence indicating the arrest was motivated by his First Amendment protected activities. [*Id*.; Young Dep., R. 55-2, PageID ## 438-440].

When Blankenship was arrested, other members of his group, who were in the same place, participating in the same First Amendment protected activity, but who left when the Troopers told them to leave the fenced area, were not arrested. [*See,* Blankenship Dep., R. 55-8, PageID ## 658-659]. Likewise, other groups conducting First Amendment activities within the permitted areas, without proper credentials, were told to leave and did so without arrest or incident. [*See, e.g.,* Johnson Dep., R. 55-7, PageID ## 546-547]. Only those who defied an order to leave the fenced area were arrested, regardless of the content of their speech or activities. [*Id.*; R. 55-2, PageID ## 438-440; R. 55-8, PageID ## 658-659].

As a general rule, a plaintiff bringing a First Amendment retaliatory-arrest claim, such as Blankenship's, "must plead and prove the absence of probable cause for the arrest." *Nieves v. Bartlett*, 587 U.S. 391, 402 (2019); *see also, Gonzalez v. Trevino*, 602 U.S. 653, 655 (2024). In *Hartman v. Moore*, 547 U.S. 250 (2006), the Supreme Court considered a split between circuits, as to what had to be proven to state a claim that "retaliatory actions, including criminal prosecutions," were motivated by an individual's First Amendment protected activities, and the court "adopted the requirement that plaintiffs plead and prove the absence of probable cause for the underlying criminal charge." *Id.*, at 256, 265-66; *Nieves*, 587 U.S. at 400. The district

court found that Trooper Young had probable cause, because "Young reasonably believed Blankenship was on private property for the purpose of KRS 511.080," and Blankenship cannot rebut that conclusion. That alone is dispositive of the issue. [Memorandum Opinion and Order, R. 30, PageID # 173; Memorandum Opinion and Order, R. 101, PageID # 1337].

The fact that Blankenship wished to share his message with passersby entitled him to the protection of the First Amendment, but it did not entitle him to ignore criminal laws that apply to everyone, regardless of whether they are also engaging in First Amendment protected speech. *Emp. Div., Dep't of Hum. Res. of Oregon v. Smith*, 494 U.S. 872, 878-79 (1990); U.S. Const. amend. I. It is true that "[a] law burdening religious practice that is not neutral or not of general application must undergo the most rigorous of scrutiny." *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah.,* 508 U.S. 520, 546 (1993). However, no such law was enforced against Blankenship at Churchill Downs and the fact that he was sharing a religious message does not excuse him from complying with generally applicable laws unrelated to speech, such as Kentucky's law against criminal trespass. Ky. Rev. Stat. § 511.080. "We have never held that an individual's religious beliefs excuse him from compliance with an otherwise valid law prohibiting conduct that the State is free to regulate. On the contrary, the record of more than a century of our free

exercise jurisprudence contradicts that proposition." *Smith*, 494 U.S. at 878–

79. "Because the ticketed area's restrictions only incidentally affected

Blankenship's preaching," the district court correctly determined that Trooper

Young was entitled to summary judgment in his favor. [R. 101, PageID #

1333].

## V.    METRO'S ADMINISTRATIVE POLICIES ARE UNRELATED TO TROOPER'S YOUNG'S DECISION TO ARREST BLANKENSHIP AND THE COURT'S DECISION ABOUT THOSE POLICIES WOULD NOT DEFEAT TROOPER YOUNG'S QUALIFIED IMMUNITY

For his fifth argument, Blankenship claims that Metro's Policy is vague, and

allows for unbridled discretion in enforcement. However, Trooper Young did not

enforce, or have any particular knowledge of, the policy under which Metro issued a

permit to Churchill Downs. Trooper Young's instruction, as part of the temporary

security detail for the Kentucky Derby, was only that, "the area covered by the permit

was actually their premises or meaning private property[.]" [*Id*. at PageID ## 380-

381]. Accordingly Trooper Young acted under the belief, based on his knowledge of

the event, that the area was functionally private property controlled by Churchill

Downs. [*Id*.].   Trooper Young arrested Blankenship "under KRS 511.080, which

states: 'A person is guilty of criminal trespass in the third degree when he knowingly

enters or remains unlawfully in or upon premises.'" [Memorandum Opinion and

Order, R. 30, PageID # 167 (quoting Ky. Rev. Stat. § 511.080)].

Blankenship makes no argument regarding the validity of Ky. Rev. Stat. § 511.080, under which Trooper Young acted. This Appellee will leave arguments about metro's internal administrative procedures to be argued by Metro. As to Trooper Young, Blankenship's own brief makes it clear that, at the time of Blankenship's arrest, there was no "clearly established" legal precedent from which a state trooper could have determined that the city issuing a permit allowing Churchill Downs to treat a certain area of the street or sidewalk as if it was private property during the Kentucky Derby would violate anyone's rights, any more than Churchill Downs excluding trespassers from their own real estate would violate rights. Regardless of the Court's opinion, in hindsight, of the city's administrative procedures, a Kentucky State Trooper enforcing Kentucky state law, based on the facts available to Trooper Young, is still entitled to qualified immunity.

## VI.   THE DISTRICT COURT CORRECTLY FOUND THAT TROOPER YOUNG WAS ENTITLED TO QUALIFIED IMMUNITY

Blankenship first argues that Trooper Young is not entitled to qualified immunity because "Young violated Blankenship's constitutional rights," as set out in Appellant's previous arguments. As set out in Trooper Young's arguments above, and the Memorandum Opinion and Order of the district court [R. 101], no such violation occurred, where Blankenship was arrested under a state criminal law that applied without regard to his speech or religious activities.

Second, Blankenship says that "the Court only found qualified immunity as to

Blankenship's false arrest claim." [Appellant's Br. at 54]. Blankenship cites the district court's Memorandum Opinion and Order [R. 30] granting Trooper Young's motion to dismiss Blankenship's false arrest claim, at the start of the litigation. [R. 30, PageID # 165]. However, Blankenship is clearly aware that the court also found that Trooper Young was entitled to qualified immunity "to Blankenship's remaining claims" in its Memorandum Opinion and Order from which this appeal arises. [R. 101, PageID ## 1336-1337]. It is unclear why Blankenship makes this factually incorrect assertion on appeal.

Finally, Blankenship argues that Trooper Young's qualified immunity "only applies to claims for damages – not for claims for declaratory or injunctive relief." [Appellant's Br. at 54]. Blankenship says that, "if there was a constitutional violation, it does not matter, for purposes of Blankenship's claims for declaratory and injunctive relief, whether the law was 'clearly established.'" [*Id*.]. The two major flaws in Blankenship's argument are that there was no constitutional violation and he asserted no claim for "declaratory and injunctive relief," that was at all applicable to Trooper Young. This Appellee has no part in the enforcement of the city of Louisville's policies or contracts and, even if he did, "Blankenship's rights were not violated," disposing of any claims for declaratory and injunctive relief. [R. 101, PageID # 1336]. As a legal matter, "[w]hen seeking declaratory and injunctive relief, a plaintiff must show actual present harm or a significant possibility of future harm

in order to demonstrate the need for pre-enforcement review." *National Rifle Ass'n of America v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997); *Grendell v. Ohio Supreme Court*, 252 F.3d 828, 832 (6th Cir. 2001). With regard to Trooper Young, Blankenship complains only of his arrest more than three years ago. [Complaint, R. 1]. At no point in the litigation has he claimed any ongoing violation of his rights, or any possibility that Trooper Young will arrest him for preaching at the Kentucky Derby in future years – that apparently did not occur in 2023, 2024, or 2025. Blankenship has never stated a legal basis that would support declaratory or injunctive relief against Trooper Young.

Trooper Young has nothing to do with the city government, ordinances, contracts, or policies of Metro. He is employed by the Commonwealth of Kentucky to enforce Kentucky state law, as he did in this case. *See, e.g.,* Ky. Rev. Stat. § 16.010-.176. Whether in his individual or official capacity, Trooper Young has no say in Metro's policies and ordinances, or its contractual relationship with Churchill Downs, and Blankenship has never claimed that Trooper Young did have the power to provide any relief a court might order, other than monetary damages.

## CONCLUSION

As demonstrated by the facts and arguments set out above, the facts in the district court record were largely undisputed and, with any doubts resolved in favor of Blankenship, the record showed that he was arrested under a content-neutral

criminal trespass statute, solely because he trespassed on property that had been temporarily permitted to Churchill Downs, for crowd control during the 2022 Kentucky Derby.

Blankenship was treated just like any other person who entered the clearly marked, fenced area. He deliberately ignored warnings to leave from various Churchill Downs employees and from state police. Others in his group, engaged in the same activity, were not arrested when they left after being told to do so by the state police. Other people who entered without tickets, for unrelated reasons, were also told to leave when they were discovered. The record shows that Blankenship's arrest was solely for his violation of a content-neutral state law and did not violate his First Amendment right to protest or preach his religious message.

The U.S. District Court for the Western District of Kentucky correctly found that Trooper Elliott Young was entitled to qualified immunity on Blankenship's claims against him and no argument in Blankenship's brief seriously challenges that conclusion.

**WHEREFORE**, the Memorandum Opinion & Order [R. 101], granting summary judgment to the Defendant/Appellee, Kentucky State Trooper Elliott Young, must be affirmed.

Respectfully submitted,

*/s/Brenn O. Combs*
Brenn O. Combs, KBA # 87656
Staff Attorney
Kentucky State Police Legal Services
919 Versailles Road
Frankfort, KY 40601
(502) 782-1800
(502) 573-1636 facsimile
Brenn.Combs@ky.gov
Counsel for Trooper Elliott Young

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and 6 Cir. R. 32(b)(1), it contains 29 pages, 6,568 words and 605 lines of text, as permitted by Fed. R. App. P. 32(a)(7) and 6 Cir. R. 32.

*/s/Brenn O. Combs*

## CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2025, I electronically filed the foregoing with the clerk of the Court by using the CM/ECF system, which will automatically send email notification of such filing to all counsel of record in this matter.

*/s/Brenn O. Combs*
Counsel for Appellee, Elliott Young

# DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| # | R.E. # | Title | PageID # |
|---|--------|-------|----------|
| 1. | 1 | Complaint | 1-27 |
| 2. | 30 | Memorandum Opinion and Order | 158-174 |
| 3. | 52-2 | Excerpt from Deposition of Doug Sweeney | 253-267 |
| 4. | 55-2 | Deposition of Trooper Elliott Young | 358-471 |
| 5. | 55-3 | Permit Application | 472-501 |
| 6. | 55-4 | Permit | 502-503 |
| 7. | 55-5 | Photograph of "No Trespassing" sign | 504 |
| 8. | 55-7 | Deposition of Major Matt Johnson | 506-624 |
| 9. | 55-8 | Deposition of Jacob Blankenship | 625-710 |
| 10. | 55-9 | Kentucky Uniform Citation | 711 |
| 11. | 55-10 | Criminal Pink Slip, Jefferson Dist. Ct. | 712 |
| 12. N/A | 62 | Blankenship's video, "Full Preach May 7 Kentucky SD 480p," (video exhibit filed conventionally) | |
| 13. | 71-1 | Deposition of Cpt Jeremy Smith | 1000-1068 |
| 14. | 71-2 | Excerpt from Deposition of Doug Sweeney | 1069-1111 |
| 15. | 101 | Memorandum Opinion and Order | 1316-1339 |
| 16. | 103 | Notice of Appeal | 1341-1343 |